IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| **DONALD D. TOLER,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**JO ANNE BARNHART,** )<br>**Commissioner of Social Security,** )<br>)<br>**Defendant.** ) | **CIVIL ACTION NO. 5:04-0343** |

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's Application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401 - 433. This case is presently pending before the Court on Plaintiff's Motion for Judgment on the Pleadings filed on October 13, 2004 (Document No. 9.), and Defendant's Motion for Judgment on the Pleadings filed on November 12, 2004 (Document No. 11.). Both parties have consented in writing to a decision by the United States Magistrate Judge.

It appears from the record that the Plaintiff, Donald D. Toler (hereinafter referred to as "Claimant"), initially filed an Application for DIB on September 5, 2000, alleging disability as of April 15, 2000, due to back and knee injuries, heart problems, shortness of breath and hearing loss. (Tr. at 12, 38 - 39.) The claim was denied initially and upon reconsideration, and Claimant requested a hearing. A hearing was held before the Honorable John T. Yeary on June 25, 2002, and by Decision dated August 28, 2002, ALJ Yeary determined that Claimant's coronary artery disease, degenerative disc disease, right knee disorder, depression and borderline intellectual functioning were severe but Claimant was not entitled to benefits. (Tr. at 38 - 49.) Claimant requested review

of the ALJ's Decision, and the ALJ's decision became the final decision of the Commissioner on May 9, 2003, when the Appeals Council denied Claimant's request for review. (Tr. at 12.) Claimant filed a further application for DIB on February 4, 2003, alleging disability as of April 15, 2000, due to his back, knee and heart condition and nerves. (Tr. at 78 - 80.)[1] His further claim was denied initially and upon reconsideration. (Tr. at 56 - 58, 63 - 65.) Claimant requested a hearing, and a hearing was held on November 18, 2003, before ALJ Yeary. (Tr. at 302 - 336.) By Decision dated December 24, 2003, ALJ Yeary determined that Claimant was not entitled to benefits. (Tr. at 12 - 22.) The ALJ's decision became the final decision of the Commissioner on February 10, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 4 - 5.) On April 9, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (1999). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the

---

[1] Clamant amended his onset date in view of ALJ Yeary's first decision to August 29, 2002. (Tr. at 13, 334.)

claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (1999). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a).[2] First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

---

[2] These Regulations were substantially revised effective September 20, 2000. *See* 65 Federal Register 50746, 50774 (August 21, 2000).

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>     (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>     (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>     (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date of disability. (Tr. at 20, Finding No. 2.)  Under the second inquiry, the ALJ found that Claimant suffered from degenerative disc disease, coronary artery disease, right knee disorder, depressive disorder, intermittent explosive disorder and borderline intellectual functioning which he deemed severe impairments. (Tr. at 14 - 15.)[3] At the third inquiry, the ALJ concluded that Claimant's medically

---

[3] In his August 28, 2002, Decision, ALJ Yeary found that Claimant suffered from coronary artery disease, degenerative disc disease, right knee disorder, depression and borderline intellectual functioning which he deemed severe. (Tr. at 43.)

determinable impairments did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 21, Findings No. 4.) The ALJ stated as follows respecting Claimant's residual functional capacity:

> The claimant retains the residual functional capacity to perform work that does not require exertion above the light level. Additionally, he can never climb ladders, ropes, or scaffolds; he can occasionally climb stairs and ramps, balance, stoop, crouch, crawl, and kneel; He should avoid even moderate exposure to extreme cold and extreme heat; he should avoid concentrated exposure to vibration and hazards (moving machinery, heights, etc.); he experiences mild to moderate pain but could be attentive to and carry out the assigned work tasks; he requires a low-stress environment involving simple, repetitive tasks with no public contact and limited contact with supervisors and co-workers.

(Tr. at 21, Findings No. 7.)[4] The ALJ found that Claimant could not perform any of his past relevant work. (Tr. at 21, Finding No. 8.) Nevertheless, the ALJ concluded that Claimant had the residual functional capacity to perform a significant range of light work and thus, "[c]onsidering the types of work that the claimant is still functionally capable of performing in combination with the claimant's age, education, and work experience, he could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy as listed in the body of the decision." (Tr. at 21, Finding Nos. 12 and 13.)[5] On this basis, benefits were denied. (Tr. at 21.)

---

[4] In his August 28, 2002, Decision, ALJ Yeary found that Claimant had basically the same residual functional capacity. (Tr. at 46.) Notably, he added as restrictions that Claimant should have "no public contact and limited contact with supervisors and co-workers" in formulating Claimant's RFC in his December 24, 2003, Decision in view of evidence indicating that Claimant had difficulty in these areas.

[5] Vocational expert Casey Vass testified in view of ALJ Yeary's hypothetical that Claimant could perform jobs at the light exertional level including mail room clerk, hand packer and laundry worker and jobs at the sedentary exertional level including surveillance system monitor, product inspector, and assembler. (Tr. at 20 and 332 - 333.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner in this case is in not conformity with all applicable legal standards and supported by substantial evidence.

Claimant's Background

Claimant was born on April 14, 1957, and was 46 years old at the time of the administrative hearing, November 18, 2003. (Tr. at 69, 300.) Claimant finished the 9th grade in school. (Tr. at 95, 300 - 301.) In the past, he worked as a roof bolter in the mines. (Tr. at 98, 311.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to give controlling weight to the opinions of Claimant's treating physicians Dr. Doyle and Dr. Faheem respecting his physical and mental residual functional capacity. (Document No. 10, pp. 8 - 10.) The Commissioner contends that the ALJ conducted his analysis in accordance with applicable law and regulations and did not err in rejecting the opinions of Claimant's treating physicians respecting his residual functional capacity. (Document No. 12, pp. 13 - 19.)

## ANALYSIS

Claimant contends that the ALJ "erred when he did not give great weight to the opinions and residual functional capacity assessment of the treating physicians, Daniel Doyle, M.D., and Ahmed D. Faheem, M.D., without any explanation as to why their opinions were not given greater weight." (Document No. 10, p. 2.) Claimant notes that when the ALJ's hypothetical was expanded to include moderate to severe pain and limitations on Claimant's ability to attend to and carry out work tasks and to include the limitations identified by Dr. Faheem and Dr. Doyle, the vocational expert stated that there were no jobs available. (Document No. 10, p. 8.) The Commissioner points out that though the ALJ rejected the assessments of Dr. Doyle and Dr. Faheem, he incorporated Dr. Doyle's balancing and environmental limitations and Dr. Faheem's limitations regarding Claimant's ability to relate to co-workers, interact with supervisors, deal with work stresses and understand, remember and carry out complex job instructions into his RFC finding. (Document No. 12, p. 13.) The Commissioner asserts that Dr. Doyle's representations contained in his treatment notes and assessment of Claimant's functional capacity are inconsistent and the ALJ properly relied upon the

physical assessments of Dr. Lim[6] and Dr. Lambrechts.[7] (Id., pp. 15 - 17.) Likewise, the Commissioner states that Dr. Faheem's representations contained in his treatment notes are inconsistent with his assessment and substantial evidence supported the ALJ's reliance upon the mental assessments of Dr. Lilly[8] and Dr. Smith.[9] (Id., pp. 17 - 19.)

---

[6] Dr. Rogelio Lim, a specialist in internal medicine, completed a Physical Residual Functional Capacity Assessment Form on March 27, 2003, finding that Claimant could occasionally lift 20 pounds and frequently lift 10 pounds; could stand and/or walk and sit for about six hours in an 8-hour workday with normal breaks; was otherwise unlimited in his ability to push/pull; could occasionally climb, balance, stoop, kneel, crouch and crawl; and should avoid exposure to vibrations and hazards (heights, machinery, etc.). (Tr. at 187 - 194.)

[7] Dr. Marcel Lambrechts, a specialist in internal medicine, completed a Physical Residual Functional Capacity Assessment Form on July 5, 2003, reaching the same conclusions as Dr. Lim and finding in addition that Claimant should avoid exposure to extreme heat and cold. (Tr. at 260 - 268.)

[8] Dr. Debra Lilly, a psychologist, completed a Psychiatric Review Technique Form on April 12, 2003, finding on the basis of Claimant's medical and psychiatric records that Claimant had depressive and anxiety disorders and that he experienced mild restriction of activities of daily living and difficulties in maintaining concentration, persistence or pace and moderate difficulties in maintaining social functioning. (Tr. at 235 - 248.) Dr. Lilly also completed a Mental Residual Functional Capacity Assessment Form finding that Claimant experienced no significant limitations in most categories and moderate limitation in his ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. at 230 - 233.)

[9] Dr. Rosemary Smith, a psychologist, completed a Psychiatric review Technique Form on July 7, 2003, finding that Claimant had a depressive syndrome characterized by loss of interest in almost all activities, appetite and sleep disturbance, decreased energy and difficulty concentrating or thinking and a personality disorder, namely intermittent explosive disorder. Like Dr. Lilly, Dr. Smith found that Claimant experienced mild restriction of activities of daily living and difficulties in maintaining concentration, persistence or pace and moderate difficulties in maintaining social functioning. (Tr. at 274 - 287.) Dr. Smith also completed a Mental residual Functional Capacity Assessment Form finding, as Dr. Lilly had, that Claimant experienced no significant limitations in most categories and moderate limitation in his ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. at 269 - 272.)

Evaluation of opinions of medical sources begins at the second level of the sequential analysis as the ALJ is considering whether a claimant has a severe impairment. At this level, Regulations provide a framework for crediting the opinions of medical sources. The Regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). That Regulation provides further that "[u]nless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion." In evaluating the opinions of treating physicians, the ALJ generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2)(2000). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55(W.D.Va. 1996); see also, 20 C.F.R. 404.1527(d)(2)(2000). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. § 404.1527(d)(2)(2000). Ultimately, it is the responsibility of the ALJ, not the Court, to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the ALJ's conclusions are rational. Oppenheimer v. Finch, 495 F.2d 396,397 (4th Cir. 1994).

Social Security Ruling 96-2p, 1996 WL 374188 (S.S.A.), reiterates the standard for considering medical opinions of treating sources stating when the ALJ must adopt the opinions of treating sources on the issue(s) of the nature and severity of claimants' impairments as follows:

10

> The [regulatory] provision recognizes the deference to which a treating source's medical opinion should be entitled. It does not permit us to substitute our own judgment for the opinion of a treating source on the issue(s) of the nature and severity of an impairment when the treating source has offered a medical opinion that is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.

According to SSR 96-2p, the medical opinions of treating sources must be given controlling weight when they meet four factors: (1) they must be opinions of "treating sources"; (2) they must be "medical opinions", i.e., opinions about the nature and severity of claimants' impairments; (3) the ALJ must find them "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques; and (4) even if well-supported, the opinions must be "not inconsistent" with the other "substantial evidence" in the individual's case record. SSR 96-2p states further as follows:

> It is not unusual for a single treating source to provide medical opinions about several issues; for example, at least one diagnosis, a prognosis, and an opinion about what the individual can still do. Although it is not necessary in every case to evaluate each treating source medical opinion separately, adjudicators must always be aware that one or more of the opinions may be controlling while others may not.

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 416.927(d)(2).

Generally speaking with respect to medical opinions, the ALJ gives more weight to opinions of treating physicians than to those of examining and non-examining physicians. 20 C.F.R. §

11

404.1527. As between the opinions of examining and non-examining physicians, the ALJ will generally give more weight to the opinion of examining physicians. 20 C.F.R. § 404.1527(d)(1). Opinions of medical experts are accorded the same treatment as that given non-examining sources. 20 C.F.R. § 1527(f)(2)(iii).

The ALJ must accompany his decision with sufficient explanation to allow a reviewing Court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

The United States Court of Appeals for the Fourth Circuit has stated that in Social Security cases, "[w]e cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to *all* of the relevant evidence." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (emphasis added). Quoting its decision in a prior case, the Court stated as follows:

> The courts . . . face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'

Id. at 236 (quoting Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977)). In Gordon, the claimant was examined by several doctors. See id. at 235. The Secretary, in determining that the claimant was

capable of sedentary work, relied upon the testimony of a non-examining medical advisor, Dr. Bruce. See id. In remanding the case, the Fourth Circuit noted that neither the ALJ nor the Appeals Council indicated the weight attributed to the various medical reports submitted by the claimant, some of which supported Dr. Bruce's testimony and some of which did not. See id. at 235-36. Thus, the ALJ had not indicated the weight given to *all* of the evidence analyzed.

In Murphy v. Bowen, 810 F.2d 433 (4th Cir. 1987), the Fourth Circuit discussed the issue of an ALJ choosing between two sharply divided pieces of medical evidence. In Murphy, the Social Security claimant applied for disability on the basis of, among other things, "lack of education." Id. at 435. The claimant's medical record contained two conflicting psychological evaluations performed by clinical psychologists. See id. One psychologist, Dr. Andrews, found that claimant had a full-scale IQ of 71, suffered from only mild retardation, and had no psychological or personality disorders. See id. at 435-37. The other psychologist, Dr. Rudin, strongly disagreed with the findings of Dr. Andrews. See id. Dr. Rudin used different tests in evaluating the claimant, and criticized the tests used by Dr. Andrews as less reliable. See Murphy, 810 F.2d at 435. Dr. Rudin found that the claimant had a full-scale IQ of only 63, and found evidence of "psychotic tendencies, lack of contact with reality, and a strong suggestion of schizophrenia or schizoid personality disorder." Id. At the claimant's administrative hearing, a vocational expert testified that with an IQ score no lower than 71, there would be jobs claimant could perform, given his residual functional capacity, but with an IQ of 63, and some other added limitations, there would be no such jobs. See id. at 436. The ALJ found, based upon the evidence, that the claimant retained the residual functional capacity to return to his past relevant work as a groundskeeper. See id. The Fourth Circuit found, on the available record, "little or no indication why the ALJ credited Dr. Andrews' views over those of Dr. Rudin."

13

Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987). The Court held that "[i]n the face of such a sharp division in medical evidence, it is simply unacceptable for the ALJ to adopt one diagnosis over another without addressing the underlying conflict." Id.

At levels four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity (RFC) for substantial gainful activity, i.e., what the claimant can still do. At level four, the ALJ considers the claimant's symptoms, including pain. A two-step process is used to determine whether a claimant's symptoms, including pain, are disabling. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the symptoms/pain alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2002); SSR 96-7p; see also Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the symptoms/pain and the extent to which they affect a claimant's ability to work must be evaluated. Craig, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause symptoms/pain, "the claimant's subjective complaints [of symptoms/pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of symptoms/pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2002).

"RFC represents the most that an individual can do despite his or her limitations or

restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2002). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2002).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

It is clear that ALJ Yeary accepted the diagnoses of Claimant's treating physicians Dr. Doyle and Dr. Faheem at the second level of the prescribed sequential analysis in determining that Claimant had degenerative disc disease, coronary artery disease, right knee disorder, intermittent explosive disorder and borderline intellectual functioning as severe impairment. (Tr. at 14 - 15.) In doing so, the ALJ considered Dr. Doyle's treatment notes from September, 2000, to July, 2003, and Dr. Faheem's notes from March, 2001, to July, 2003. It is further clear that ALJ Yeary followed the special technique in determining the severity of Claimant's mental disorders. Considering

15

Claimant's testimony and Dr. Faheem's notes, the ALJ determined that Claimant had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence or pace and no episodes of decompensation of extended duration. (Tr. at 16.)

At step four and five of the sequential analysis, the ALJ conducted an analysis of the evidence pertaining to Claimant's symptoms/pain and residual functional capacity and concluded that "the claimant has produced evidence of impairments that could reasonably be expected to cause the alleged symptoms." (Tr. at 17.) In conformity with the prescribed analytical framework, the ALJ moved on to consideration of the intensity and persistence of Claimant's symptoms/pain. (Id.) The ALJ discussed Dr. Faheem's September 17, 2003, Medical Assessment of Ability to Do Work-Related Activities (Mental)[10] and Dr. Doyle's September 23, 2003, Medical Assessment of Ability to Do Work-Related Activities (Physical)[11] stating as follows:

---

[10] Dr. Faheem, a psychiatrist, completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) on September 17, 2003. (Tr. at 291 - 293.) He found that Claimant had good ability to understand, remember and carry out simple job instructions and maintain personal appearance. He found that Claimant had fair ability to deal with the public, function independently, understand remember and carry out detailed but not complex job instructions, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability. He found that Claimant had poor ability to follow work rules, relate to co-workers, use judgment, interact with supervisors, deal with work stresses, maintain attention/concentration, and understand, remember, and carry out complex job instructions.

[11] Dr. Doyle completed a Medical Assessment of Ability to Do Work-Related Activities (Physical) on September 23, 2003. (Tr. at 294 - 297.) Dr. Doyle found that Claimant could lift 10 pounds occasionally and less than 10 pounds frequently. He found that Claimant could stand and/or walk for two hours in an 8-hour workday and for 15 - 20 minutes without interruption. He found that Claimant could sit for two hours in an 8-hour workday and for 20 - 30 minutes without interruption. He determined that Claimant could occasionally balance and should never climb, stoop, crouch, kneel or crawl. He found that Claimant's ability to reach and push/pull were affected by his back and right knee impairments. He concluded that Claimant should avoid heights, moving machinery, temperature extremes and vibration.

> On September 17, 2003, Dr. Faheem completed a Medical Assessment of Ability to Do Work-Related Activities (Mental).The psychiatrist opined the claimant has poor (defined as seriously limited but not precluded) ability to follow work rules, relate with co-workers, use judgment, interact with supervisors, deal with work stresses, maintain attention and concentration, and understand, remember, and carry out complex job instructions. However, in treatment notes, the psychiatrist indicated that Mr. Toler's judgment, memory and recall were intact. The undersigned finds Dr. Faheem's opinion very exaggerated based upon his actual clinical notes. Thus, the undersigned gives no weight to Dr. Faheem's opinion.
>
> On September 23, 2003, Dr. Doyle completed a Medical Assessment of Ability to Do work-Related Activities (Physical). Dr. Doyle opined the claimant is able to perform less than the full range of sedentary work. The doctor noted that the claimant can never climb, stoop, crouch, crawl or kneel; he can occasionally balance; his ability to reach and push/pull are impaired; and he should avoid exposure to heights, moving machinery, temperature extremes, and vibration. Dr. Doyle's opinion is not supported by the objective medical evidence. Therefore, the undersigned gives no weight to Dr. Doyle's opinion.

(Tr. at 17 (References to exhibits omitted.)) Thus, the ALJ rejected the opinions of Dr. Doyle and Dr. Faheem respecting what Claimant could do. The ALJ then related inconsistencies he found in Claimant's testimony and statements which he made to his physicians and in documents which he submitted in processing his claim. (Tr. at 17 - 18.) Based upon the inconsistencies, the ALJ found the Claimant not entirely credible. (Tr. at 18.) The ALJ then stated Claimant's residual functional capacity as follows:

> The claimant retains the residual functional capacity to perform work that does not require exertion above the light level. Additionally, he can never climb ladders, ropes, or scaffolds; he can occasionally climb stairs and ramps, balance, stoop, crouch, crawl, and kneel; He should avoid even moderate exposure to extreme cold and extreme heat; he should avoid concentrated exposure to vibration and hazards (moving machinery, heights, etc.); he experiences mild to moderate pain but could be attentive to and carry out the assigned work tasks; he requires a low-stress environment involving simple, repetitive tasks with no public contact and limited contact with supervisors and co-workers.

First, the ALJ's analysis of the medical evidence is not in conformity with the applicable law and Regulations. It appears that ALJ Yeary accepted and relied upon the opinions of Dr. Lim and

17

Dr. Lambrechts in determining that Claimant had the physical residual functional capacity to perform work at the light exertional level and rejected Dr. Doyle's opinion indicating that Claimant had the capacity to perform work at the sedentary level without mentioning or discussing the opinions of Dr. Lim and Dr. Lambrechts and explaining how their opinions are and Dr. Doyle's opinion is not supported by evidence of record. The ALJ likewise did not explain why he rejected Dr. Doyle's opinion respecting Claimant's ability to stand/walk and sit and apparently found Dr. Lim's and Dr. Lambrecht's opinions in this regard supported by the record. Respecting Claimant's mental residual functional capacity, the ALJ appears to have accepted the assessments of Dr. Lilly and Dr. Smith and rejected the opinion of Dr. Faheem, but he does not mention or discuss how the opinions of Dr. Lilly and Dr. Smith are supported objectively by evidence of record and Dr. Faheem's is not. The Court further finds that the ALJ's rating analysis of Claimant's mental impairments at level two of the sequential analysis is insufficient insofar as the ALJ does not state the degree of functional limitation which he finds that Claimant experiences in the four functional areas (activities of daily living; social functioning; concentration, persistence or pace; and decompensation). The ALJ found that Claimant's depression, intermittent explosive disorder and borderline intellectual functioning "significantly limit[ed] the claimant's ability to perform basic work activities." (Tr. at14 - 15.) The ALJ did not, however, state to what extent Claimant's severe mental impairments limited his ability to function in each of the four functional areas.

Second, The ALJ's analysis at step two of the symptoms/pain analysis is inadequate. The ALJ does not relate how Claimant's subjective statements respecting his symptoms including pain are, or are not, consistent with objective medical and other evidence. The ALJ found "a significant number of inconsistencies in the record." (Tr. at 17.) Comparing Claimant's reports of his symptoms

to his physicians with his testimony and statements he made in documents filed in the course of his case at the administrative level, the ALJ relates narrowly where he believes Claimant has made reports and given testimony inconsistently respecting his abilities. (Tr. at 17 - 18.) The ALJ does not discuss objective medical evidence or Claimant's medications. The undersigned finds that it is by no means clear from the record that Claimant's reports and statements amount to inconsistencies as the ALJ found. It further appears that some of the information upon which the ALJ relied to find Claimant less than credible was immaterial. For example, the ALJ states that Claimant testified that he last worked in December, 1999, but told Dr. Wisman, a treating physician, about a year later that he returned to work and seemed to be doing well. (Tr. at 17.) Similarly, the ALJ states that Claimant testified at the November 18, 2003, hearing that he was able to lift two gallons of milk[12] when he indicated to Dr. Wisman in June, 2000, that he laid cinder blocks for thirteen hours and then walked on a treadmill for fifteen minutes. As stated above, Claimant amended his onset date to August 24, 2002, and the ALJ apparently accepted this. Claimant's reports that he engaged in activities at a higher exertional level about two years prior to the August 24, 2002, onset date is immaterial in consideration of his RFC on and after August 24, 2002. If anything, it appears from this evidence that Claimant's condition was worsening or deteriorating and he was experiencing more debilitating symptoms/pain, and the ALJ should have examined the medical evidence to determine if indeed this was actually the case. Thus, the Court finds that the ALJ's analysis is insufficient and the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision must be vacated and this matter must be remanded for further development of the record

---

[12] Actually, when asked if he could lift a gallon of milk in each hand or more or less than that, Claimant answered, "Probably on some days I could probably lift a gallon of milk in each hand and some days I couldn't." (Tr. at 323.)

and consideration of the evidence at steps two (rating of the limitations which Claimant experiences by virtue of his severe mental impairments), four and five of the sequential analysis consistent with the applicable law and Regulations including the further testimony of a vocational expert as may be necessary upon the ALJ's further consideration and explanation of Claimant's limitations in conformity with applicable law and Regulations.

Upon a thorough examination of the evidence of record, the Court finds that the Commissioner's decision that Claimant is not entitled to DIB is not in conformity with all applicable legal standards and supported by substantial evidence of record. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, Defendant's Motion for Judgment on the Pleadings is **DENIED**, the final decision of the Commissioner is **VACATED**, this matter is **REMANDED** to the Commissioner for (1) further proceedings and consideration of the evidence at steps two, four and five of the sequential analysis, and (2) the preparation of a decision by an ALJ consistent with applicable law and Regulations, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Order to counsel of record.
ENTER: September 13, 2005.

R. Clarke VanDervort
United States Magistrate Judge